T.C. Summary Opinion 2006-57

UNITED STATES TAX COURT

EDWARD C. AND SUSAN R. HANNA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19033-03S.          Filed April 19, 2006.

Edward C. and Susan R. Hanna, pro sese.

<u>Lauren B. Epstein</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $26,693 deficiency in petitioners' 2000 Federal income tax and a $5,338.60 penalty pursuant to section 6662(a). The issues for decision are: (1) Whether the passive activity rules of section 469 preclude petitioners from deducting losses from their rental real estate activities in the taxable year 2000, and (2) whether petitioners are liable under section 6662(a) for an accuracy-related penalty.

Some of the facts have been stipulated, and they are so found. The stipulation of facts, supplemental stipulation of facts, and attached exhibits, as well as additional exhibits admitted during trial, are incorporated herein by this reference. Petitioners Susan Hanna (Mrs. Hanna) and Edward Hanna (Mr. Hanna) are married and resided in Sanibel, Florida, when they filed their petition. For convenience, we combine our findings and discussion herein.

Sanibel is a popular vacation spot located on an island off the west coast of Florida. In 1999, petitioners purchased two houses in Sanibel and began renting them to vacationers. In 2000, petitioners rented the first house for a total of 20 weeks and the second house for a total of 19 weeks. Petitioners also purchased a third house in Sanibel in May 2000, which they immediately leased back to the sellers for the remainder of that year. For convenience, we refer to the management and operation of the three properties as the "rental activities".

Petitioners did not live in Sanibel in 2000. Instead, they

operated their rental activities from their home in Weston, Massachusetts. Petitioners received on-site assistance from George Veillette, a Sanibel resident and real estate agent who sold petitioners their first two rental properties. Mr. Veillette periodically checked the properties when they were vacant to make sure the premises were secure, and the water and heat systems were functioning. He also supplied keys to repairmen and, on rare occasions, to renters. Mr. Veillette estimated he spent a total of approximately 6 hours a month looking after the properties.

Although petitioners both spent time on the rental activities, Mrs. Hanna performed the majority of the work. She designed and constructed one or more Internet Web sites to help advertise the properties, designed and placed advertisements in newspapers, responded to e-mails from prospective customers, and performed a number of other tasks. Petitioners traveled to Florida five times in 2000, spending a total of approximately 5 weeks there. During their visits petitioners looked for additional properties to buy, met potential customers, and arranged for cleaning, maintenance, and repairs for their existing properties.

In addition to managing their rental activities in 2000, both petitioners worked full time in the Boston, Massachusetts, metropolitan area. Mr. Hanna worked as a project manager for Fidelity Investments, earning a salary of $125,371 for

approximately 2,000 hours of work. Mrs. Hanna worked as a computer consultant for three different companies, earning $123,270 for 2,119 hours of work.

Petitioners filed a joint 2000 Federal income tax return. On Schedule E, Supplemental Income and Loss, petitioners reported $46,210 of gross income from the rental activities, and $118,057 of expenses and depreciation, for a loss of $71,847. Although respondent did not adjust any of the Schedule E items of income, expense or depreciation, he determined that the $71,847 loss was a nondeductible passive activity loss. Respondent also determined that petitioners were liable for an accuracy-related penalty under section 6662(a).

Burden of Proof

Deductions are a matter of legislative grace, and a taxpayer generally bears the burden of proving that he or she is entitled to the deductions claimed. See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). The taxpayer is required to maintain records that are sufficient to enable the Commissioner to determine his or her correct tax liability. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

The Commissioner's determinations set forth in a notice of deficiency generally are presumed correct, and the taxpayer bears the burden of showing that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner where the taxpayer complies with substantiation requirements, maintains records, and cooperates fully with reasonable requests for witnesses, documents, and other information.

Petitioners contend that the burden of proof shifts to respondent. Broadly construed, their argument appears to be: (1) They fully cooperated with respondent by providing copies of their records to him, and (2) respondent conceded in a letter that respondent bears the burden of proof.

Based on our review of the record, we conclude that petitioners fully cooperated with respondent's requests for documents and other information. "For the burden to be placed on the Commissioner, however, the taxpayer must comply with the substantiation and record-keeping requirements of the Internal Revenue Code." Higbee v. Commissioner, 116 T.C. 438, 441 (2001). For the reasons discussed infra, petitioners did not comply with these requirements. Accordingly, this argument fails.

Petitioners also rely on a letter from respondent dated June 2, 2003. The letter informs petitioners that the statute of limitations period for assessing their 2000 Federal tax liability

will expire soon and requests that they sign and return a Form 872, Consent to Extend the Time to Assess Tax.  It also describes petitioners' rights, including their right to withhold consent. The letter states:  "It may be considered that you have cooperated with the Internal Revenue Service, for purposes of determining who has the burden of proof in any court proceeding, even if you do not sign the consent form."  Petitioners believe that this constitutes a concession by respondent that he bears the burden of proof.  We disagree.

In general, the Government must assess tax within 3 years after the due date of a timely filed return.  Sec. 6501(a) and (b)(1).  The Secretary and a taxpayer can consent to extend the assessment period, but the Secretary must notify the taxpayer of the taxpayer's right to withhold such consent.  Sec. 6501(c)(4)(A) and (B).  Respondent's letter informs petitioners of their rights, but it does not concede that respondent bears the burden of proof.  Rather, it explains that withholding consent is not considered in deciding whether petitioners cooperated fully with reasonable requests for witnesses, documents, and other information.  The letter does not cause the burden of proof to shift to respondent, and petitioners' reliance on the letter therefore is misplaced.

Loss From Rental Activities

Section 469 generally disallows for the taxable year any passive activity loss. Sec. 469(a). A passive activity loss is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year. Sec. 469(d)(1). A passive activity is any trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). Rental activity generally is treated as a per se passive activity regardless of whether the taxpayer materially participates. Sec. 469(c)(2),(4). Under section 469(c)(7)(B), however, the rental activity of a taxpayer in a real property trade or business (real estate professional) is not per se passive activity. Instead, it is treated as a trade or business and subject to the material participation requirements of section 469(c)(1). Sec. 1.469-9(e)(1), Income Tax Regs.

A taxpayer qualifies as a real estate professional and is not engaged in a passive activity if:

> (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

> (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

Sec. 469(c)(7)(B). A trade or business includes being an

employee.  <u>Putoma Corp. v. Commissioner</u>, 66 T.C. 652, 673 (1976), affd. 601 F.2d 734 (5th Cir. 1979); <u>Fowler v. Commissioner</u>, T.C. Memo. 2002-223.  In the case of a joint return, the same spouse must satisfy each requirement.  Sec. 469(c)(7)(B).

In the present case, the parties agree that petitioners' rental activities constituted a real property trade or business and that Mr. Hanna was not a real estate professional.  They dispute whether Mrs. Hanna qualified as a real estate professional.  Accordingly, we focus on whether Mrs. Hanna's participation in the rental activities meets the requirements of section 469(c)(7)(B).

Section 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), provides:

> The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means.  Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

This Court has acknowledged that these temporary regulations are somewhat ambiguous concerning the records a taxpayer needs to maintain, but we have held that they do not allow a post-event "ballpark guesstimate".  <u>Fowler v. Commissioner</u>, <u>supra</u>; <u>Goshorn v. Commissioner</u>, T.C. Memo. 1993-578.

Mrs. Hanna did not keep a contemporaneous log of the time

she spent on the rental activities.  Petitioners did produce a number of documents, however, including more than 400 pages of e-mail messages sent to and from an e-mail account they maintained for the rental activities, sales and marketing materials they developed, a "cost analysis" and "cash flow analysis" they prepared, and various other documents relating to the rental activities such as photographs, worksheets, handwritten notes, receipts, and correspondence.

Petitioners also produced two summaries of the time spent on the rental activities.  The first summary is titled "Susan Hanna's Activity for Year 2000" and indicates that Mrs. Hanna spent 3,247 hours on rental activities.  This document does not indicate when it was prepared.  The second document is an 89-page "narrative summary" of each petitioner's rental activities that they created shortly before trial.  This document indicates that Mrs. Hanna spent 2,610 hours on rental activities in 2000.

Petitioners did not explain the discrepancy between the two summaries.  Petitioners' pretrial memorandum lists the 2,610-hour figure, however, and petitioners consistently used that figure at trial.  Furthermore, petitioners made frequent reference to the 89-page narrative summary during their testimony.  Accordingly, we assume that petitioners' position is that Mrs. Hanna worked 2,610 hours on rental activities in 2000.  The narrative summary provides the following breakdown of those hours:

| Category | Hours |
| --- | --- |

| | |
|---|---|
| Advertising | 123 |
| Administrative and management | 867 |
| Correspondence | 138 |
| Web site | 814 |
| Site visit | 256 |
| Purchasing | 244 |
| Acquisition | 168 |
| Total | 2,610 |

Petitioners calculated the hours reflected in the narrative summary by applying a "minimal standard" to the various tasks Mrs. Hanna performed.  For example, petitioners contend that Mrs. Hanna spent an hour a day checking the e-mail account for the rental activities to identify potential customers and delete unwanted e-mails.  Petitioners arrived at this figure by measuring the time Mrs. Hanna spent performing the same task in 2005.  They believe this method provides an accurate estimate of Mrs. Hanna's time, even though petitioners owned four additional rental properties in 2005.  Petitioners also contend that it took Mrs. Hanna an average of 10 minutes to respond to each e-mail they received from potential customers.  They believe this results in a conservative estimate of their time because some relevant e-mails had been deleted in 2000 and thus were not made part of the record.  Petitioners argue that it also took Mrs. Hanna 10 minutes to pay each bill they received because she often had to contact the billing company to correct errors on the invoices.

Mrs. Hanna added a number of new pages to their Internet Web sites in 2000.  Petitioners contend that each Web page took

Mrs. Hanna 4 hours to construct and additional time each month to maintain. During their visits to Florida in 2000, petitioners contend Mrs. Hanna spent 60 percent of her waking hours on rental activities. Mrs. Hanna admitted this last figure was the result of "guesstimating", but she maintained that the 89-page narrative summary provided a more accurate estimate of the time she spent on the rental activities in 2000.

Applying the test of section 469(c)(7)(B) to the facts of this case, petitioners first must prove that more than one-half of Mrs. Hanna's personal services performed in trades or businesses were performed in real property trades or businesses. See sec. 469(c)(7)(B)(i). Because Mrs. Hanna was paid for 2,119 hours of work as a computer consultant, she must have spent more than that amount of time performing services for the rental activities.

Petitioners argue that Mrs. Hanna satisfied this requirement because she performed 2,610 hours of services in the rental activities. As described above, however, petitioners did not calculate this figure by reference to appointment books or calendars. In fact, Mrs. Hanna admitted that she was not good at recording the time she spent on the rental activities. Furthermore, although petitioners produced a narrative summary, the accuracy of this document is suspect. Petitioners prepared the narrative summary shortly before trial, approximately 5 years after the events in question occurred. More importantly,

the hours reflected in the document do not appear reasonable. For example, one entry states that Mrs. Hanna and Mr. Hanna spent a total of 80 hours preparing their Schedule E and Form 4562, Depreciation and Amortization, for their 1999 Federal income tax return. Considering that petitioners owned only two rental properties in 1999, this estimate appears excessive. We are also skeptical that Mrs. Hanna spent an average of 10 minutes to read and respond to an e-mail or to pay a bill. Finally, the discrepancy between the figures reflected in the narrative summary and those in the document titled "Susan Hanna's Activity for Year 2000" casts further doubt on the process by which petitioners calculated Mrs. Hanna's rental activities hours.

We conclude that the method petitioners used to calculate Mrs. Hanna's participation in the rental activities constitutes an impermissible "ballpark guesstimate". See, e.g., Fowler v. Commissioner, T.C. Memo. 2002-223. Petitioners have not established by reasonable means that Mrs. Hanna performed more than one-half of her personal services in real property trades or businesses in 2000.[1] Because Mrs. Hanna did not qualify as a

---

[1] Petitioners argue that although Mrs. Hanna was paid for 2,119 hours of employment, she worked only 1,850 hours. They attribute the difference to paid vacation, severance pay, and "billing for hours not really worked". Even if we accepted the 1,850-hour figure, our conclusion would not change because petitioners' method of calculation would still be an impermissible "ballpark guesstimate". Furthermore, while Mrs.

(continued...)

real estate professional, we need not consider whether she materially participated in the rental activities.  See sec. 469(c)(7)(B).

Although petitioners did not raise the issue, we note that section 469(i) provides an exception to the general rule that passive activity losses are disallowed.  A taxpayer who "actively participates" in a rental real estate activity can deduct a maximum loss of $25,000 per year related to the activity.  Sec. 469(i)(1) and (2).  This exception is fully phased out, however, when adjusted gross income (AGI) equals or exceeds $150,000.  Sec. 469(i)(3)(A), (E).  Petitioners reported AGI of $179,359.[2]  Accordingly, they cannot deduct any amount of

---

[1](...continued)
Hanna testified that overbilling was common among computer consultants in her position, this practice raises the question of whether she also inflated the hours reflected in the narrative summary.

[2] Under sec. 469(i)(3)(E)(iv), adjusted gross income (AGI) is determined without regard to any passive activity loss or any loss allowable by reason of sec. 469(c)(7).  We do not address the application of sec. 469(i)(3)(E)(iv) to the present case because the AGI that petitioners reported already exceeds the $150,000 limitation.

the passive activity loss in 2000.  Respondent's determination is sustained.

Accuracy-Related Penalty Under Section 6662(a)

Section 6662(a) provides that a taxpayer may be liable for a penalty of 20 percent of the portion of an underpayment of tax attributable to (1) a substantial understatement of tax or (2) negligence or disregard of rules or regulations.  Sec. 6662(a), (b)(1) and (2).  An "understatement of tax" is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1) and (2).  The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code.  Sec. 6662(c).  The term "disregard" includes any careless, reckless, or intentional disregard.  Id.  Respondent has the burden of production with respect to the accuracy-related penalty.  See sec. 7491(c).

In the present case, 10 percent of the tax required to be shown on petitioners' return was $5,592.90.  Petitioners understated their tax by $26,693.  Respondent therefore has met his burden of production.

An exception to the section 6662 penalty applies when the taxpayer demonstrates (1) there was reasonable cause for the underpayment, and (2) the taxpayer acted in good faith with respect to the underpayment.  Sec. 6664(c).  Whether the taxpayer acted with reasonable cause and in good faith is

determined by the relevant facts and circumstances on a case-by-case basis. See Stubblefield v. Commissioner, T.C. Memo. 1996-537; sec. 1.6664-4(b)(1), Income Tax Regs. "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge and education of the taxpayer." Sec. 1.6664-4(b)(1), Income Tax Regs. A taxpayer is not subject to the addition to tax for negligence where the taxpayer makes honest mistakes in complex matters, but the taxpayer must take reasonable steps to determine the law and to comply with it. Niedringhaus v. Commissioner, 99 T.C. 202, 222 (1992). The most important factor is the extent of the taxpayer's effort to assess the proper tax liability. Stubblefield v. Commissioner, supra; sec. 1.6664-4(b)(1), Income Tax Regs.

At trial, respondent's counsel acknowledged that the provisions under section 469 are complicated. Petitioners had limited experience with these provisions in 2000 because they had begun their rental activities only a year earlier. Furthermore, despite working full-time jobs in addition to the rental activities, petitioners created and/or maintained a number of records relating to the rental activities, such as e-mails, receipts, and correspondence. Although these records fail to establish that Mrs. Hanna was a real estate

professional, they do establish that petitioners made an honest effort to comply with the substantiation requirements and assess their proper tax liability.  Petitioners have shown reasonable cause for the underpayment and demonstrated that they were acting in good faith.  Accordingly, we conclude that petitioners are not liable for the accuracy-related penalty under section 6662(a).

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

> Decision will be entered for respondent as to the deficiency and for petitioners as to the accuracy-related penalty under section 6662(a).